UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DANIEL GREGOIRE; NICHOLAS
FRISCO; SALVATORE MANCUSO;
BRENT MAROHNIC; DEBRA AUL;
BRIAN FRISCO; GLEN LEFFEW, JR.;
and MICHELE DUNCAN,

CASE NO.: 6:03- CV - 251- 31 KRS

                Plaintiffs,

vs.

LUCENT TECHNOLOGIES, INC.;
AGERE SYSTEMS, INC.,

                Defendants.

_____/

## RULE 23 COMPLAINT FOR DAMAGES WITH REQUEST FOR EQUITABLE AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiffs sue Defendants and allege:

### NATURE OF THE ACTION

Plaintiffs SALVATORE MANCUSO ("MANCUSO"), DEBRA AUL ("AUL"), BRIAN FRISCO ("B. FRISCO"), MICHELE DUNCAN ("DUNCAN"), GLEN LEFFEW, JR. ("LEFFEW"), NICHOLAS FRISCO ("N. FRISCO), and BRENT MAROHNIC ("MAROHNIC") all are former employees of AGERE SYSTEMS, INC. ("AGERE"), which was spun off from LUCENT TECHNOLOGIES, INC. ("LUCENT"). In 1998, LUCENT and International Brotherhood of Electrical Workers EM – 3 Council ("IBEW" or "Union") engaged in negotiations to complete a new Collective Bargaining Agreement. IBEW filed a charge with the National Labor Relations Board, claiming LUCENT had intentionally concealed its plan to outsource work done by IBEW members in an effort to obtain favorable contract language regarding outsourcing and

subcontracting.

As a result of the charge, the National Labor Relations Board issued a formal complaint against LUCENT alleging that LUCENT bargained in bad faith by failing to inform the Union that it had conducted a feasibility study and plan that ultimately called for major outsourcing. LUCENT settled the complaint by agreeing to two different addendums to the Collective Bargaining Agreement ("CBA"). The first addendum is known as the Memorandum of Agreement ("MOA"). In the MOA, LUCENT/AGERE agrees that if it outsourced jobs held by IBEW members, making their jobs "surplus," it will pay certain benefits. If the employees voluntarily leave, LUCENT/AGERE will pay $40,000 and will provide the same benefits as called for in the LUCENT Career Transition Option Program ("LCTOP") ("paragraph 4 benefits"). If the employees are involuntarily t erminated, LUCENT/AGERE a greed t o p ay e ach o f t hose e mployees a one-time lump sum of $10,000 in addition to other benefits, listed <u>post</u> in paragraph 78 ("paragraph 5 benefits"). LUCENT bound its spin-off companies, including AGERE, to this agreement through a side letter. The second addendum to the CBA is called the Enhanced Facility Closing Program ("EFCP"). This agreement provided for employees if LUCENT/AGERE decided to close a facility.

At the time the MOA and the EFCP were negotiated, LUCENT/AGERE Orlando plant employed approximately 9,000 people. Through a series of job eliminations involved in this suit, that number has been reduced to approximately 400, who will lose their jobs when the plant is sold or closed.

On or about February 2, 2001, 50 persons, including Plaintiff MANCUSO, were involuntarily terminated from LUCENT. Their jobs were outsourced to PolarFab, LLC

and AGERE's Allentown, Pennsylvania facility.  None of these workers were offered the benefits of paragraph 5 of the MOA.  LUCENT and IBEW Local 2000 President Tom Christian told the workers that their jobs were not being outsourced, which the Plaintiffs had no reason to doubt until later.  Although the MOA was not yet in existence, LUCENT knew or should have known the MOA was close to completion and had a duty, pursuant to the CBA, to inform those who were laid off that the MOA was close to completion.

On or about May 4, 2001, 265 people, including Plaintiff AUL, were involuntarily terminated from LUCENT/AGERE.  Their jobs were outsourced to Silicon Manufacturing Partners in Singapore.  None of those workers were offered the terms of paragraph 5 of the MOA by LUCENT/AGERE.  LUCENT/AGERE and Christian again told the Plaintiffs that their jobs were not being outsourced, which the Plaintiffs had no reason to doubt until later.

On or about September 9, 2001, 54 people, including Plaintiffs B. FRISCO and DUNCAN were involuntarily laid off.  Their jobs were outsourced to Chartered Semiconductor ("Chartered"), Taiwan Semiconductor ("Taiwan") and PolarFab, LLC. None of those workers were offered the terms of paragraph 5 of the MOA by AGERE. LUCENT/AGERE and Christian told the Plaintiffs that their jobs were not being outsourced, which the Plaintiffs had no reason to doubt until later.

On or about January 12, 2002, 59 people, including Plaintiff LEFFEW, were laid off by AGERE.  Their jobs were outsourced to Chartered and Taiwan.  None of the workers was offered the terms of paragraph 5 of the MOA by AGERE.

In March 2002, the AGERE announced that it had decided to sell or close its

Orlando facility.  On or about September 4, 2002, 122 people, including Plaintiff N. FRISCO, were offered and accepted a voluntary retirement and separation package from AGERE.  Under the terms of the MOA, if those jobs were being outsourced to other companies, each of those persons should have been offered a lump sum of $40,000 as provided for in the MOA and provided the benefits called for by the LCTOP.  Instead, AGERE presented what it called a "Voluntary Termination Offer" which was inferior to the MOA and the EFCP.  IBEW Local 2000, through Christian, helped AGERE present this inferior offer.  Christian stated that he actually "worked around" the contract language (the MOA and the EFCP) to help AGERE present the Voluntary Termination Offer.  It was at that point that the Plaintiffs became aware of and/or add actual evidence that the Union violated its duty of fair representation as to the other groups of layoffs by not (a) properly investigating whether the jobs held by IBEW workers were outsourced to other companies and/or (b) joining with LUCENT/AGERE in a scheme to avoid payment of MOA and/or EFCP benefits.

On or about November 9, 2002, 26 employees, including Plaintiff MAROHNIC, were involuntarily laid off.  AGERE did not offer benefits under the MOA or the EFCP. The Union has not investigated whether the jobs held by those members were eliminated due to outsourcing or due to AGERE's plan to close the facility.

Approximately 400 employees, including GREGOIRE, are still employed by AGERE.  Based on AGERE's conduct with other persons who it has terminated, it does not appear that AGERE has any intention of paying benefits as required by either the MOA or the EFCP.

LUCENT/AGERE's actions violated §301 of the Labor Management Relations

Act of 1947 (29 U.S.C. §185), which allows employees to sue their employer for violating provisions of collective bargaining agreements. By not paying benefits under with the MOA or the EFCP, the Union violated the CBA. LUCENT/AGERE's actions also violated ERISA by not paying benefits due under an employee pension plan, and employee welfare plan and an employee long-term savings and security plan. Finally, because LUCENT has never paid benefits under the MOA and/or the EFCP, it has anticipatorily breached those agreements as it relates to Plaintiff GREGOIRE and his class of Plaintiffs.

On their own behalf, and on behalf of the other Plaintiffs, the named Plaintiffs bring this action for legal and equitable relief under both §301 of the Labor Management Relations Act and ERISA, including an order requiring LUCENT and/or AGERE to pay benefits due to the Plaintiffs under either the MOA and/or the EFCP.

The total value of the benefits lost by the named Plaintiffs and those similarly situated is believed to substantially exceed $10 million.

## JURISDICTION

1. This is an action pursuant to the Labor Management Relations Act of 1947 (29 U.S.C. §141 *et seq.*), and the Employment Retirement Income Security Act of 1974, as amended (29 U.S.C. §1001, *et seq.*), and the common law of Florida, seeking damages in excess of $75,000. This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1332(c)(1), 28 U.S.C. §1367, 29 U.S.C. §185, and 29 U.S.C. §1132(a).

## PARTIES

2. Plaintiff MANCUSO was employed by Defendant AGERE SYSTEMS, INC. ("AGERE") at its Orlando facility at all times pertinent to this cause of action. He is one

of 50 persons that were involuntarily separated from employment with AGERE on February 2, 2001. He is a "person" pursuant 29 U.S.C. §152(1). MANCUSO is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C. §1002(2)(A). MANCUSO is entitled to bring this action under 29 U.S.C. §1132(a).

3.  Plaintiff AUL was employed by AGERE at its Orlando facility at all times pertinent to this cause of action. She is one of 265 persons involuntarily separated from employment with AGERE on May 4, 2001. She is a "person" pursuant 29 U.S.C. §152(1). AUL is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C. §1002(2)(A). AUL is entitled to bring this action under 29 U.S.C. §1132(a).

4.  Plaintiffs B. FRISCO and DUNCAN were employed by AGERE at all times pertinent to this cause of action. They are two of 54 persons involuntarily separated from employment with AGERE on September 9, 2001. They are "persons" pursuant 29 U.S.C. §152(1). B. FRISCO is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C. §1002(2)(A). B. FRISCO and DUCAN are entitled to bring this action under 29 U.S.C. §1132(a).

5.  Plaintiff L EFFEW w as employed by AGERE at all times pertinent to this cause of action. He is one of approximately 59 persons involuntarily separated from employment with AGERE on January 12, 2002. He is a "person" pursuant 29 U.S.C.

§152(1). LEFFEW is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C. §1002(2)(A). LEFFEW is entitled to bring this action under 29 U.S.C. §1132(a).

6.  Plaintiff N. FRISCO was employed by AGERE at all times pertinent to this cause of action. He is one 122 persons who ended his employment with AGERE on September 14, 2002 pursuant to a separation agreement. He will serve as class representative for those 113 persons. He is a "person" pursuant 29 U.S.C. §152(1). N. FRISCO is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C. §1002(2)(A). N. FRISCO is entitled to bring this action under 29 U.S.C. §1132(a).

7.  Plaintiff MAROHNIC was employed by AGERE at all times pertinent to this cause of action. He is one 26 persons who were involuntarily separated from employment on November 9, 2002. He is a "person" pursuant 29 U.S.C. §152(1). MAROHNIC is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C. §1002(2)(A). MAROHNIC is entitled to bring this action under 29 U.S.C. §1132(a).

8.  Plaintiff GREGOIRE is still employed with AGERE. He is a "person" pursuant 29 U.S.C. §152(1). GREGOIRE is also a vested participant in either LUCENT or AGERE's Welfare Benefit Plan as defined under 29 U.S.C. §1002(1) and is a vested participant in LUCENT or AGERE's Pension Benefit Plan as defined under 29 U.S.C.

§1002(2)(A).  GREGOIRE is entitled to bring this action under 29 U.S.C. §1132(a).

9.  Named Plaintiffs MANCUSO, AUL, B. FRISCO, DUNCAN, LEFFEW, N. FRISCO, MAROHNIC and GREGOIRE bring this Rule 23 Complaint on their own behalf, and on behalf of a class of all similarly situated individuals.

10.  D efendant LUCENT is a f oreign corporation b ased in M urray H ill, Ne w Jersey.  It is licensed to do business and was at all times pertinent to this cause of action doing business in Orange County, Florida.  It is an "employer" pursuant to 29 U.S.C. §152(2).  It is an "administrator" of the employee welfare and employee pension plans pursuant to 29 U.S.C. §1002(16)(A) and a "plan sponsor" of the employee welfare and pension plans pursuant to 29 U.S.C. §1002(16)(B).

11.    Defendant AGERE is a foreign corporation based in Allentown, Pennsylvania.  I t is licensed to do business and is doing business in Orange County, Florida.  It is an "employer" pursuant to 29 U.S.C. §152(2).  It is an "administrator" of employee welfare and pension plans pursuant to 29 U.S.C. §1002(16)(A) and a "plan sponsor" of employee welfare and pension benefit plans pursuant to 29 U.S.C. §1002(16)(B).

**CLASS ACTION ALLEGATIONS:  FEBRUARY 2, 2001 CLASS**

12.   The named Plaintiff MANCUSO brings this action as a class action in accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action.  Judicial economy dictates that the issues raised herein be resolved in a single action.

13.  The proposed class is defined as any and all persons who:

a. Were involuntarily laid off on or around February 2, 2001 who were not offered

the terms of the MOA by LUCENT and/or AGERE.

14. The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA.

15. Upon information and belief, the proposed class includes approximately 50 individuals. The class is so numerous that joined of all members in impracticable.

16. There are common questions of law and fact that relate to and affect the rights of each member of the class. These questions involve the character of information the defendants provided to, and concealed from the Plaintiffs regarding benefits available under the MOA, and the Defendants' legal duties to the Plaintiffs in this regard.

17. The claims of the named class representatives are typical of the claims of the class. The claims of all class members depend on the showing of some and/or all the acts and/or omissions by LUCENT, AGERE and the Union that give rise to the rights of MANCUSO to the relief sought. There are no conflicts of interest between MANCUSO and any other class members with respect to this action or with respect to the claims for relief sought in this Complaint.

18. MANCUSO will fairly and adequately protect the interest of the class. MANCUSO has retained counsel experienced and capable in litigating claims under §301 of the Labor Management Relations Act of 1947 and under ERISA.

19. This action is maintainable as a class action under Rule 23(b) because:  (1) the prosecution of separate actions by class members would create a risk of inconsistent or varying adjudication with respect to those class members; (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions

of law and fact common to members of the class predominate over any questions affecting individual class members.

## CLASS ACTION ALLEGATIONS:  MAY 4, 2001 CLASS

20.   The named Plaintiff AUL brings this action as a class action in accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action.   Judicial economy dictates that the issues raised herein be resolved in a single action.

21.   The proposed class is defined as any and all persons who:

a.   Were involuntarily laid off on or around May 4, 2001 who were not offered the terms of the MOA by LUCENT and/or AGERE.

22.   The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA.

23.   Upon information and belief, the proposed class includes approximately 265 individuals.  The class is so numerous that joined of all members in impracticable

24.   There are common questions of law and fact that relate to and affect the rights of each member of the class.  These questions involve the character of information the Defendants provided to, and concealed from the Plaintiffs regarding benefits available under the MOA, and the Defendants' legal duties to the Plaintiffs in this regard.

25.   The claims of the named class representatives are typical of the claims of the class.  The claims of all class members depend on the showing of some and/or all the acts and/or omissions by LUCENT, AGERE and the Union that give rise to the rights of AUL to the relief sought.  There are no conflicts of interest between AUL and any other class

members with respect to this action or with respect to the claims for relief sought in this Complaint.

26.  AUL will fairly and adequately protect the interest of the class.  AUL has retained counsel experienced and capable in litigating claims under §301 of the Labor Management Relations Act of 1947 and under ERISA.

27.  This Action is maintainable as a class action under Rule 23(b) because:  (1) the prosecution of separate actions by class members would create a risk of inconsistent or varying adjudication with respect to those class members; (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions of law and fact common to members of the class predominate over any questions affecting individual class members.

## CLASS ACTION ALLEGATIONS: SEPTEMBER 9, 2001 CLASS

28.  The named Plaintiffs B. FRISCO and DUNCAN bring this action as a class action in accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action.  Judicial economy dictates that the issues raised herein be resolved in a single action.

29.  The proposed class is defined as any and all persons who:

a.  Were involuntarily laid off on or around September 9, 2001 who were not offered the terms of the MOA by LUCENT and/or AGERE.

30.  The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA.

31.  Upon information and belief, the proposed class includes approximately 54

individuals.  The class is so numerous that joined of all members in impracticable.

32.  There are common questions of law and fact that relate to and affect the rights of each member of the class.  These questions involve the character of information the defendants provided to, and concealed from the Plaintiffs regarding benefits available under the MOA, and the Defendants' legal duties to the Plaintiffs in this regard.

33.  The claims of the named class representatives are typical of the claims of the class.  The claims of all class members depend on the showing of some and/or all the acts and/or omissions by LUCENT, AGERE and the Union that give rise to the rights of B. FRISCO and DUNCAN to the relief sought.  There are no conflicts of interest between B. FRISCO, DUNCAN and any other class members with respect to this action or with respect to the claims for relief sought in this Complaint.

34.  B. FRISCO and DUNCAN will fairly and adequately protect the interest of the class.  B. FRISCO and DUNCAN have retained counsel experienced and capable in litigating claims under §301 of the Labor Management Relations Act of 1947 and under ERISA.

35.  This Action is maintainable as a class action under Rule 23(b) because:  (1) the prosecution of separate actions by class members would create a risk of inconsistent or varying adjudication with respect to those class members; (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions of law and fact common to members of the class predominate over any questions affecting individual class members.

### CLASS ACTION ALLEGATIONS:  JAUNUARY 12, 2002 CLASS

36.  The named Plaintiff LEFFEW brings this action as a class action in

accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action. Judicial economy dictates that the issues raised herein be resolved in a single action.

37. The proposed class is defined as any and all persons who:

a. Were involuntarily laid off on or around January 12, 2002, who were not offered the terms of the MOA by LUCENT and/or AGERE.

38. The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA.

39. Upon information and belief, the proposed class includes approximately 59 individuals. The class is so numerous that joined of all members in impracticable

40. There are common questions of law and fact that relate to and affect the rights of each member of the class. These questions involve the character of information the defendants provided to, and concealed from the Plaintiffs regarding benefits available under the MOA, and the Defendants' legal duties to the Plaintiffs in this regard.

41. The claims of the named class representatives are typical of the claims of the class. The claims of all class members depend on the showing of some and/or all the acts and/or omissions by LUCENT, AGERE and the Union that give rise to the rights of LEFFEW to the relief sought. There are no conflicts of interest between LEFFEW and any other class members with respect to this action or with respect to the claims for relief sought in this Complaint.

42. LEFFEW will fairly and adequately protect the interest of the class. LEFFEW has retained counsel experienced and capable in litigating claims under §301 of

the Labor Management Relations Act of 1947 and under ERISA.

43. This action is maintainable as a class action under Rule 23(b) because: (1) the prosecution of separate actions by class members would create a risk of inconsistent or varying adjudication with respect to those class members; (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions of law and fact common to members of the class predominate over any questions affecting individual class members.

## CLASS ACTION ALLEGATIONS: SEPTEMBER 4, 2002 CLASS

44. The named Plaintiff N. FRISCO brings this action as a class action in accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action. Judicial economy dictates that the issues raised herein be resolved in a single action.

45. The proposed class is defined as any and all persons who:

a. Ended their employment with AGERE on September 4, 2002 pursuant to a separation agreement.

46. The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA and/or the EFCP.

47. Upon information and belief, the proposed class includes approximately 122 individuals. The class is so numerous that joined of all members in impracticable.

48. There are common questions of law and fact that relate to and affect the rights of each member of the class. These questions involve the character of information the defendants provided to, and concealed from the Plaintiffs regarding benefits available

under the MOA and/or the EFCP, and the Defendants' legal duties to the Plaintiffs in this regard.

49.   The claims of the named class representatives are typical of the claims of the class.  The claims of all class members depend on the showing of some and/or all the acts and/or omissions by LUCENT, AGERE and the Union that give rise to the rights of N. FRISCO to the relief sought.  There are no conflicts of interest between N. FRISCO and any other class members with respect to this action or with respect to the claims for relief sought in this Complaint.

50.   N. FRISCO will fairly and adequately protect the interest of the class.  N. FRISCO has retained counsel experienced and capable in litigating claims under §301 of the Labor Management Relations Act of 1947 and under ERISA.

51.   This action is maintainable as a class action under Rule 23(b) because:  (1) the prosecution of separate actions by class members would create a risk of inconsistent or varying adjudication with respect to those class members;  (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions of law and fact common to members of the class predominate over any questions affecting individual class members.

### CLASS ACTION ALLEGATIONS:  NOVEMBER 9, 2002 CLASS

52.   The named Plaintiff MAROHNIC brings this action as a class action in accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action.  Judicial economy dictates that the issues raised herein be resolved in a single action.

53.   The proposed class is defined as any and all persons who:

a. Were involuntarily laid off on or around November 9, 2002 who were not offered the terms of the MOA and/or the EFCP by LUCENT and/or AGERE.

54. The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA and/or the EFCP.

55. Upon information and belief, the proposed class includes approximately 26 individuals. The class is so numerous that joined of all members in impracticable.

56. There are common questions of law and fact that relate to and affect the rights of each member of the class. These questions involve the character of information the defendants provided to, and concealed from the Plaintiffs regarding benefits available under the MOA and/or EFCP, and the Defendants' legal duties to the Plaintiffs in this regard.

57. The claims of the named class representatives are typical of the claims of the class. The claims of all class members depend on the showing of some and/or all the acts and/or omissions by L UCENT, AGERE and the Union that give rise to the rights of MAROHNIC to the relief sought. There are no conflicts of interest between MAROHNIC and any other class members with respect to this action or with respect to the claims for relief sought in this Complaint.

58. MAROHNIC will fairly and adequately protect the interest of the class. MAROHNIC has retained counsel experienced a nd capable in litigating claims under §301 of the Labor Management Relations Act of 1947 and under ERISA.

59. This Action is maintainable as a class action under Rule 23(b) because: (1) the prosecution of separate actions by class members would create a risk of inconsistent

or varying adjudication with respect to those class members; (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions of law and fact common to members of the class predominate over any questions affecting individual class members.

## CLASS ACTION ALLEGATIONS: THOSE STILL EMPLOYED WITH AGERE

60.   The named Plaintiff GREGOIRE brings this action as a class action in accordance with Fed. R. Civ. P. 23, and consistent with the provisions of ERISA regarding such action.  Judicial economy dictates that the issues raised herein be resolved in a single action.

61.   The proposed class is defined as any and all persons who:

a.   Are still employed by AGERE and covered by the Collective Bargaining Agreement.

62.   The proposed class covers all employees who were unlawfully deprived of material information, or were affirmatively misled, regarding benefits available to them under the MOA and/or the EFCP.

63.   Upon information and belief, the proposed class includes approximately 400 individuals.  The class is so numerous that joined of all members in impracticable

64.   There are common questions of law and fact that relate to and affect the rights of each member of the class.  These questions involve the character of information the Defendants provided to, and concealed from the Plaintiffs regarding benefits available under the MOA and/or EFCP, and the Defendants' legal duties to the Plaintiffs in this regard.

65.   The claims of the named class representatives are typical of the claims of the

class. The claims of all class members depend on the showing of some and/or all the acts and/or omissions by LUCENT, AGERE and the Union that give rise to the rights of GREGOIRE to the relief sought. There are no conflicts of interest between GREGOIRE and any other class members with respect to this action or with respect to the claims for relief sought in this Complaint.

66.   GREGOIRE will fairly and adequately protect the interest of the class. GREGOIRE has retained counsel experienced and capable in litigating claims under §301 of the Labor Management Relations Act of 1947 and under ERISA.

67.   This Action is maintainable as a class action under Rule 23(b) because: (1) the prosecution of separate actions by class members would create a risk of inconsistent or varying adjudication with respect to those class members; (2) the Defendants have acted and/or refused to act on grounds generally applicable to the class; and (3) questions of law and fact common to members of the class predominate over any questions affecting individual class members.

**VENUE**

68.   Venue is proper in the Orlando Division of the Middle District of Florida pursuant to 29 U.S.C. §1132(a), 29 U.S.C. §1132(e)(1), 29 U.S.C. §1132(f), 28 U.S.C. §1391(b), and because the unlawful acts complained of herein were committed within this judicial district and division.

**CONDUCT COMPLAINED OF**
**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

69.   In 1996, AT&T, as part of a corporate restructuring, spun off its systems and technology unit, which was renamed LUCENT TECHNOLOGIES, INC.

70.   In mid-1998, LUCENT completed collective bargaining negotiations with the

IBEW.

71. Be fore t he LUCENT a nd IBEW came t o an a greement o n t he c ollective bargaining agreement, LUCENT and IBEW came into dispute over LUCENT's decision to outsource a substantial portion of its "Circuit Pack" manufacturing to several non-union companies.   Approximately 3,7000 workers at LUCENT's Columbus, Denver, Shreveport, and Oklahoma City facilities were affected by LUCENT's decision to outsource its circuit pack manufacturing.

72. In mid-1999, the IBEW filed a charge with the National Labor Relations Board, claiming LUCENT engaged in a violation of the National Labor Relations Act by not bargaining in good faith.   Specifically, the IBEW claimed that the LUCENT intentionally concealed its intentions to outsource work done by the IBEW's members in an effort to obtain favorable contract language regarding outsourcing and subcontracting.

73. On September 29, 2000, the NLRB issued a formal complaint alleging that in February 1998, LUCENT made a decision that would result in outsourcing of circuit pack manufacturing work.   Specifically, the complaint alleged that "[LUCENT] bargained in bad faith with the UNION by failing to inform the Union of its feasibility study and plan, which ultimately called for the subcontracting or outsourcing of major portions of [LUCENT's] manufacturing processes, including the manufacturer of circuit packs and by providing false and misleading information to the Union which induced the Union to agree to a subcontracting provision that allowed [LUCENT] the right to engage in virtually unlimited subcontracting."

74. Through negotiations IBEW and LUCENT settled their dispute on February 19, 2001 through a "Memorandum of Agreement," ("MOA") a copy of which is attached

as "Exhibit A."

75. LUCENT bound itself and its proposed spin-off company, AGERE, which employed all Plaintiffs, to follow the MOA, which by its terms was incorporated in the 1998 National Memorandum of Understanding between LUCENT and IBEW.

76. As part of the MOA, LUCENT agreed that if it decided to outsource work done by IBEW members and the outsourcing resulted in a surplus of employees, and the "surplus" employees decided to voluntarily leave the employ of LUCENT, LUCENT would pay the "surplus" employee a lump sum of $40,000 and would extend the employee the full range of benefits provided for in the LUCENT Career Transition Option Program ("LCTOP"). The LCTOP had previously provided for a $30,500 lump-sum payment.

77. As part of the MOA, LUCENT agreed that if any "surplus" employee did not voluntarily leave the employ of LUCENT and it subsequently decided to layoff or terminate that employee, it would extend the "surplus" employee the full range of benefits provided for in paragraph 5 of the MOA, including a one-time, lump sum transition payment of $10,000. (The MOA is attached hereto as Plaintiffs' Exhibit "A". A question and answer package agreed to by LUCENT, AGERE and IBEW explaining the provisions of the MOA is attached hereto as Plaintiffs' Exhibit "B".)

78. The rest of the benefits called for in paragraph 5 of the MOA are as follows:

a. A Five Year Enhanced Transition Leave of Absence (TLA) under the LUCENT Pension Plan, meaning any employee who was within five years of being eligible for the LUCENT Plan would be credited with the amount of service needed to reach the eligibility requirement of the pension plan.

b. An Expanded and Enhanced Social Security Supplement: equaling the amount of the reduction in the employee's monthly pension annuity payment because of retirement prior to age 55.

c. Special Pension Benefit paid based on percentage of eligible annual pay and number o f years w ith LUCENT/AGERE. ( See P age 8 o f M OA for S pecial P ension Benefit Schedule of Benefits.)

d. Extended Benefit Coverage of Affected Employees:   Those who meet eligibility for Pension benefits will receive LUCENT/AGERE's retiree medical, dental and life insurance benefits.  Those who are not pension eligible will receive their monthly premium on the LUCENT/AGERE's medical, dental and vision plans multiplied by 12, subject to applicable taxes. Other benefits   include basic life insurance and accidental death and dismemberment coverage for six months after termination.  Supplemental life insurance and supplemental accidental death and dismemberment coverage will be available at the expense of the employee.   Finally, dependant life and dependent accidental loss coverage will be available for 90 days at the expense of the employee.

e. Enhanced FAED Reimbursement allowance allows employees $5,000 in funds for certain training, out-placement and relocation expenses.

f.  Long Term Savings and Security Plan balances will be fully vested the date employment ends for all employees.   (See Plaintiffs' Ex. "A", Pages 4-11 for subparagraphs (a)-(f).)

79.  On February 2, 2001, approximately 50 employees who worked in ORI (LUCENT/AGERE's clean room), including Plaintiff MANCUSO, were involuntarily and permanently laid off by LUCENT.  LUCENT had told its employees that it was

going to convert its ORI room from a fabricator of 6-inch chips to a fabricator of 8-inch chips, which are now industry standard. However, upon information and belief, LUCENT never had any intention to convert the ORI room from a room to make 8-inch chips. In addition, a Hydrochloric Acid (HCl) spill occurred in the room, making the room useless for the production of 8-inch chips.

80. All persons who worked in ORI were at that point "surplus" employees who should have been offered the compensation offered by the MOA. Those employees were not offered the terms of the MOA. Upon information and belief, the work that was slated to be done in the ORI was outsourced.

81. Approximately 75 percent of the work from ORI was sent to PolarFab, LLC in Bloomington, Minnesota. The other 25 percent of the work from the ORI was sent to AGERE's Allentown, Pennsylvania facility.

82. Tom Christian, the President of IBEW Local 2000, which represents workers in AGERE's Orlando facility, told the workers affected by the February 2, 2001 layoff their jobs were not being outsourced.

83. Although the MOA was not in existence on February 2, 2001, LUCENT/AGERE knew or should have known that the MOA was close to being finalized and therefore had a duty, because this agreement was going to be made part of the CBA, to inform the employees laid off what was tentatively going to be in the MOA.

84. On April 2, 2001, LUCENT spun off its microelectronics unit, creating AGERE.

85. On May 4, 2001, approximately 263 people, including Plaintiff AUL, were involuntarily and permanently laid off by AGERE. Upon information and belief, those

positions were outsourced to Silicon Manufacturing Partners (SMP), a joint venture between LUCENT and Chartered Semi-Conductor Manufacturing ("Chartered"). The government of Singapore has a majority interest in Chartered. These positions were outsourced from ORI, which was unusable because of the HCl spill.   Also, LUCENT/AGERE had no intention of creating an 8-inch chip facility in Orlando. Therefore, all 263 positions were "surplus."

86. None of these 263 workers, including Plaintiff AUL, were offered the terms of the MOA by AGERE.

87. Christian again told the workers that they were not eligible for the MOA because what AGERE was doing was not outsourcing.

88. On September 9, 2001, 54 employees, including Plaintiffs B. FRISCO and DUNCAN were involuntarily and permanently laid off by AGERE.   Upon information and belief, the work those employees performed was outsourced to Chartered, Taiwan Semiconductor and PolarFab LLC, making the employees eligible for benefits under the MOA. Taiwan Semiconductor has been identified as a company to which AGERE outsources. (A copy of the Outsourcing Questionaire is attached hereto as Plaintiffs' Exhibit "C".)

89. Christian again told the workers that they were not eligible for the MOA because what AGERE was doing was not outsourcing.

90. AGERE actually began the process of closing the Orlando facility in January 2002 by commissioning studies on how much money would be saved by outsourcing the Housekeeping Support Services and Logistic Support Services functions.   (A copy of Orlando AGERE Logistics and Housekeeping Support Service Studies are attached

hereto Plaintiffs' Exhibit "D".)   Those studies found that AGERE would save approximately $1.49 million on a yearly basis by outsourcing.

91. On January 12, 2002, approximately 59 employees, including Plaintiff LEFFEW, were laid off by AGERE.  Upon information and belief, those jobs were outsourced to Chartered and Taiwan semiconductor, making the employees eligible for benefits under the MOA.

92. C hristian a gain t old t he w orkers t hat t hey were no t e ligible f or t he M OA because what AGERE was doing was not outsourcing.

93. In March 2002, AGERE put out a question and answer packet stating that it intended to sell the Orlando Facility, meaning all employees should have been eligible for benefits under the MOA or the EFCP.  (A copy of the Question and Answer packet is attached hereto as Plaintiffs' Exhibit "E".)

94. On September 4, 2002, approximately 116 persons, including Plaintiff N. FRISCO were offered and accepted a voluntary retirement and separation package from AGERE.  Those workers should have received the benefits from the MOA, or in the alternative, the benefits promised by the EFCP.  (A copy of the EFCP is attached hereto as Plaintiffs' Exhibit "F".)

95. AGERE did not offer the benefits of paragraph 4 of the MOA (which was required if AGERE decided to outsource those j obs) or the EFCP (which is required when AGERE closes a facility).  Instead they only offered the employees a voluntary termination allowance based on the number of years of service the employee had with LUCENT/AGERE.  (A copy of the voluntary termination offer is attached hereto as Plaintiffs' Exhibit "G".)  Also, AGERE required the employees to sign a waiver which

stated that the employees would not be eligible for the benefits promised by the enhanced LCTOP, the MOA or the EFCP, in direct violation of their terms.

96. IBEW Local 2000, through Christian, approved of this voluntary termination offer. In fact, Christian stated that he had intentionally "worked around" the contract language (meaning the enhanced LCTOP, the MOA and the EFCP) to help AGERE make this inferior offer to the affected employees.

97. IBEW Local 2000 violated its duty of fair representation to the affected employees by bargaining away contracted benefits under the enhanced LCTOP, the MOA and the EFCP without bringing that back to the membership for a vote.

98. It was at this point that that the Plaintiffs became able to prove that Local 2000 had violated its duty of fair representation as it related to those involuntarily laid off on February 2, 2001, May 4, 2001, September 9, 2001, and January 12, 2002, and those who took voluntary separation for lesser benefits on September 4, 2002. The Union intended the affected employees to believe that it had done its due diligence as it related to investigating whether those positions had been outsourced when the Union told them that the positions had not been outsourced. However, when the Union did not attempt to secure the superior benefits under the MOA and the EFCP for those clearly entitled to them, and instead conspired with AGERE to provide inferior benefits, the Plaintiffs then reasonably knew that the Union had violated its duty of fair representation as it related to the aforementioned lay offs.

99. On November 9, 2002, 26 employees, including Plaintiff MARCHONIC, were laid off by AGERE. Because the facility is either in the process of closing or being sold, the employees should have received benefits under either the enhanced LCTOP, the

MOA, or the EFCP.

100. The employees were not offered any benefits under any of those three plans and instead were only offered benefits under the Voluntary Termination Offer (A copy of the Voluntary Termination Offer is attached hereto as Plaintiffs' Exhibit "F".)

101. IBEW Local 2000 violated its duty of fair representation the affected employees by bargaining away benefits under the enhanced LCTOP, the MOA, and the EFCP without bringing that back to the membership for a vote.

102. Approximately 400 people, including Plaintiff GREGOIRE, remain employed by AGERE at its Orlando facility. AGERE, as demonstrated by its treatment of the last two rounds of workforce reductions, has no intentions of paying benefits as required under the enhanced LCTOP, the MOA, or the EFCP; and Local 2000, as demonstrated by its conduct of intentionally refusing to enforce the CBA, has no intention of assisting the employees in obtaining these benefits.

103. No legitimate reason exists for LUCENT's and AGERE's failure to pay benefits pursuant to the enhanced LCTOP, the MOA or the EFCP.

104. All Plaintiffs who were laid off on May 4, 2001, September 9, 2001, January 12, 2002, and November 9, 2001, are entitled to benefits under the MOA, which entitles those persons to a lump sum payment of $10,000, as described in paragraph 77 of this complaint, along with the other benefits of paragraph 5 of the MOA (as described in paragraph 78 of this complaint) and/or the benefits of the EFCP. All Plaintiffs who were laid off on February 2, 2001 are also entitled to benefits under paragraph 5 of the MOA since the MOA was going to be incorporated into the CBA.

105. All persons who voluntarily left the employment of AGERE on September 4,

2002 are entitled to the lump sum payment of $40,000, as described in paragraph 4 of MOA, as well as benefits under the EFCP, because AGERE had already announced that the facility was up for sale in March 2002

106. The violations of the CBA by LUCENT and/or AGERE are willful and vexatious, especially since LUCENT and/or AGERE enlisted the support and cooperation of Local 2000 to violate the CBA, and to deceive Plaintiffs into believing they were not entitled to the benefits of the MOA, EFCP and/or the enhanced LCTOP.

### COUNT I: VOLATION OF §301 OF LABOR MANAGEMENT RELATIONS ACT OF 1947

107. This is an action pursuant to §301 of the Labor Management Relations Act of 1947 (29 U.S.C. §185).

108. Plaintiffs incorporate herein and reallege paragraphs 1-106 of this Complaint.

109. Plaintiff MANCUSO, as well as other members of his class of Plaintiffs, were eligible for benefits under the MOA, which is an addendum to the Collective Bargaining Agreement. Those benefits were never paid to Plaintiffs.

110. Plaintiff AUL, as well as other members of her class of Plaintiffs, were eligible for benefits under the MOA, which is an addendum to the Collective Bargaining Agreement. Those benefits were never paid to Plaintiffs.

111. Plaintiffs B. FRISCO and DUNCAN, as well as other members of their class of Plaintiffs, were eligible for benefits under the MOA, which is an addendum to the Collective Bargaining Agreement. Those benefits were never paid to Plaintiffs.

112. Plaintiff LEFFEW, as well as other members of his class of Plaintiffs were eligible for benefits under the MOA, which is an addendum to the Collective Bargaining

Agreement. Those benefits were never paid to Plaintiffs.

113. Plaintiff N. FRISCO, as well as other members of his class of Plaintiffs, were eligible for benefits either under the MOA or the EFCP, which are addendums to the collective bargaining agreement. Those benefits were never paid to Plaintiffs.

114. Plaintiff MAROHNIC, as well as other members of his class of plaintiffs were eligible for benefits either under the MOA or the EFCP, which are addendums to the collective bargaining agreement. Those benefits were never paid to Plaintiffs.

115. IBEW Local 2000 breached its duty of fair representation as to all Plaintiffs.

116. Plaintiffs MANCUSO, AUL, B. FRISCO, DUNCAN, LEFFEW, N. FRISCO and MAROHNIC only became aware that Local 2000 breached its duty of fair representation as to them after September 4, 2002, when they discovered that Local 2000 had no intention of helping eligible Union members (to wit: Plaintiff N. FRISCO and the other members of his class) receive benefits under either the MOA or the EFCP.

117. Defendants LUCENT and/or AGERE breached the CBA by not paying benefits required by the MOA and/or the EFCP.

WHEREFORE, Plaintiffs request judgment against LUCENT and/or AGERE:

(a) For damages in excess of $75,000, representing benefits not paid pursuant to the CBA;

(b) For injunctive relief commanding LUCENT and/or AGERE to pay benefits to all employees eligible for benefits under either the MOA and/or the EFCP;

(c) For the attorney's fees and costs of this action; and

(d) Any other legal and equitable relief this Court deems appropriate.

## COUNT II: CLAIM FOR BENEFITS UNDER ERISA §502(a)(1)(B)

118. This is an action pursuant to ERISA, §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

119. Plaintiffs incorporate herein and reallege paragraphs 1-117 of this Complaint.

120. The plans (LUCENT and/or AGERE MOA, EFCP and enhanced LCTOP) are "employee benefit plans" pursuant to 29 U.S.C. §1002(1) and 29 U.S.C. §1002(2)(A).

121. At all times relevant, LUCENT and/or AGERE were "administrators" of the plans pursuant to 29 U.S.C. §1002(16)(A) and "sponsors" pursuant to 29 U.S.C. §1002(16)(B).

122. Plaintiff MANCUSO and members of his class were entitled to payment of benefits under the MOA within 60 days upon termination (29 U.S.C. §1056(a)(3)). To date, none of Plaintiffs in Plaintiff MANCUSO's class have been paid benefits under the MOA.

123. Plaintiff AUL and members of her class were entitled to payment of benefits under the MOA within 60 days upon termination (29 U.S.C. §1056(a)(3)). To date, none of Plaintiffs in Plaintiff MANCUSO's class have been paid benefits under the MOA.

124. Plaintiffs B. FRISCO and DUNCAN, as well as members of their class were entitled to payment of b enefits under the MOA within 60 days upon termination (29 U.S.C. §1056(a)(3)). To date, none of Plaintiffs in Plaintiffs B. FRISCO and DUNCAN's class have been paid benefits under the MOA.

125. Plaintiff LEFFEW and members of his class were entitled to payment of benefits under the MOA within 60 days upon termination (29 U.S.C. §1056(a)(3)). To date, none of Plaintiffs in Plaintiff LEFFEW's class have been paid benefits under the

MOA.

126. Plaintiff N. FRISCO and members of his class were entitled to payment of benefits under the MOA and/or the EFCP within 60 days upon termination (29 U.S.C. §1056(a)(3)). To date, none of Plaintiffs in Plaintiff N. FRISCO's class have been paid benefits under the MOA.

127. Plaintiff MAROHNIC and members of his class were entitled to payment of benefits under the MOA and/or the EFCP within 60 days upon termination (29 U.S.C. §1056(a)(3)). To date, none of Plaintiffs in Plaintiff MAROHNIC's class have been paid benefits under the MOA.

128. By failing to pay benefits under the MOA, EFCP and the enhanced LCTOP, Defendants L UCENT/AGERE have failed to discharge their fiduciary dut ies with the care, skill, prudence and diligence required by 29 U.S.C. §1104(a)(1). As a fiduciary, LUCENT/AGERE was obligated to inform the February 2, 2001 class that it was close to adopting the MOA. As for the other classes, LUCENT/AGERE had a fiduciary duty to inform the Plaintiffs of the existence of the MOA, the EFCP and the enhanced LCTOP and had a duty to pay benefits under the plans. To date, LUCENT/AGERE has not paid benefits pursuant to any of those plans and as such, Plaintiffs have been harmed by those breaches of LUCENT/AGERE's fiduciary duty.

129. Pursuant to 29 U.S.C. §1132(a)(1)(B), all Plaintiffs are entitled to maintain an action for unpaid benefits.

WHEREFORE, Plaintiffs request judgment against LUCENT and/or AGERE:

(a) For damages in excess of $75,000, representing benefits not paid pursuant to the CBA;

(b) For injunctive relief commanding LUCENT and/or AGERE to pay benefits to all employees eligible for benefits under either the MOA and/or the EFCP;

(c) For attorney's fees and costs of this action pursuant to 29 U.S.C. §1132(g)(1); and

(d) Any other equitable or legal relief this Court deems appropriate.

## COUNT III:  COMMON LAW ANTICIPATORY BREACH OF CONTRACT

130. This is an action brought pursuant to the Common Law of Florida.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

131. Plaintiffs incorporate herein and reallege paragraphs 1-106 of this Complaint.

132. Plaintiff GREGOIRE, and the members of his class are still employed by AGERE.

133. AGERE, through its treatment of the other six classes of terminations, has demonstrated through its actions that it has no intentions of paying benefits under the MOA, the EFCP and the enhanced LCTOP.

134. AGERE has committed an anticipatory breach the MOA and/or the EFCP because its acts (not paying benefits under the MOA or EFCP) have evinced an intention to refuse to pay benefits under either the MOA of the EFCP to any member of Plaintiff GREGOIRE's class.

WHEREFORE, Plaintiffs request judgment against LUCENT and/or AGERE:

(a) For damages in excess of $75,000, representing benefits not paid pursuant to the CBA;

(b) For injunctive relief commanding LUCENT and/or AGERE to pay benefits to

all employees eligible for benefits under either the MOA and/or the EFCP;

(c) For attorney's fees and costs of this action pursuant to Fed. R. Civ. P. 54(d)(1-

2); and

(d) Any other equitable relief this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues triable as of right before a jury.

DATED this 3rd day of March, 2003.

THOMAS J. PILACEK & ASSOCIATES
Red Willow Plaza
5844 Red Bug Lake Road
Winter Springs, FL  32708
(407) 660-9595

*Fla. Bar # 571709*

BY: _____  *for*
Thomas J. Pilacek
Fla. Bar No. 143576

Counsel for Plaintiffs

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

_____ Exceeds scanner's page limit

___✓___ Physical exhibit prevents scanning

_____ Other: ▓▓▓▓▓▓▓ _EXHIBITS_

# **REFER TO COURT FILE**

Revised 09/15/99