**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANIEL GREGOIRE, et al.,**

    **Plaintiffs,**

-vs-                                            **Case No. 6:03-cv-251-Orl-31KRS**

**LUCENT TECHNOLOGIES, INC. and**
**AGERE SYSTEMS,**

    **Defendants.**

_____

# ORDER

A group of Plaintiffs known as the "VTO Plaintiffs" sued their employer seeking certain benefits to which they claimed they were entitled. The Defendants filed counterclaims for, *inter alia*, breach of contract and unjust enrichment. This cause comes before the Court on the VTO Plaintiffs' Motion for Summary Judgment on the Defendants' counterclaims,[1] (Doc. 197), and the Defendants' Response thereto, (Doc. 199).

**I.    Background**

    A. The Parties

The VTO Plaintiffs include approximately 148 persons formerly employed by Lucent Technologies, Inc. ("Lucent") and/or Agere Systems ("Agere"), and whose employment ended on or about either September 14, 2002 or November 9, 2002.

---

[1] The Defendants' counterclaims appear at Doc. 61.

Lucent is a corporation based in New Jersey that was licensed to do business in Florida, and was conducting business in Orlando, Florida, during the time relevant to this case. Lucent was created in 1996 when AT&T spun off its systems and technology unit. Agere was created when Lucent spun off its microelectronics unit. Agere is a corporation based in Pennsylvania that is licensed to do business in Florida, and conducts business in Orange County, Florida.

B. The Voluntary Termination Offer

On September 1, 2002, Agere and International Brotherhood of Electrical Workers Local 2000 ("IBEW 2000") (which represented workers at Lucent/Agere's Orlando facility) agreed to a Voluntary Termination Offer ("VTO") to those employees in the Orlando facility represented by IBEW 2000. (Doc. 82 at ¶¶ 17-18). On September 4, 2002, in anticipation of the closing or sale of the Orlando facility, Agere offered the VTO to approximately 116 persons, including some members of the VTO Plaintiffs group. (Doc. 54 at 31). Agere offered the VTO to its Orlando employees again on October 8, 2002. (Doc. 82 at ¶ 19). Then, on November 9, 2002, the employment of an additional 26 Agere employees, including some members of the VTO Plaintiffs group, came to an end. (Doc. 54 at 31).

The VTO provided eligible employees with an opportunity to leave Agere's service voluntarily, in exchange for the right to receive a lump sum payment calculated based on years of service. (Doc. 82 at ¶ 20). The VTO Employee Request Form specifically provides that:

> I understand that by accepting this Voluntary Termination Offer, I am leaving the service of the Company. I must take my termination pay in a lump sum, payable within thirty (30) days after termination of my service, and that I am leaving the payroll without recall rights, and will not be eligible to LCTOP and LTP. I further understand that the provisions of The Enhanced Facility Closing Program and the terms of the Memorandum of Agreement dated February 19, 2001, will not apply to

>me.  I understand I CAN revoke this election on or before September 22, 2002, but
>I CANNOT revoke the decision after September 22, 2002.[2]

(Doc. 54, Ex. G at 3).[3]  Employees were not required to accept the VTO.  (Doc. 82 at ¶ 25).  Those employees who accepted the VTO completed an Employee Request Form, signed that form, and returned it to Agere, and thereafter each received a lump sum payment.[4]  (*Id*. at ¶ 22, 24, 27).

### C. The VTO Plaintiffs File Suit

The VTO Plaintiffs (among others) filed suit against Lucent and Agere, claiming that they were entitled to benefits under the Memorandum of Agreement ("MOA") and/or the Enhanced Facility Closing Program ("EFCP") referred to in the VTO, Agere refused to pay those benefits, and Agere instead provided the VTO Plaintiffs with the VTO which required them to accept inferior benefits upon the termination of their employment.  (Doc. 54 at 31-33).  The VTO Plaintiffs also alleged that Agere breached the applicable collective bargaining agreements by not paying benefits according to the MOA and the EFCP.  (*Id*. at 35-6).

---

[2] The quoted language is the entirety of the text on the form.  The remainder of the form constitutes spaces in which the employee was to provide certain information, such as name, address, etc.

[3] Agreements referred to in the VTO, such as the LCTOP, the Enhanced Facility Closing Program, and the Memorandum of Agreement, are all agreements providing benefits to covered employees in the event of layoffs.  All of these agreements were part of, or related to, the collective bargaining agreements between Lucent and Agere on one side, and the International Brotherhood of Electrical Workers System Council EM-3 and the International Brotherhood of Electrical Workers Local 2000 on the other.  The relationship between these parties, the agreements, and the terms thereof are thoroughly discussed in the Court's Order of January 26, 2005, (Doc. 113).

[4] Those employees are specifically identified in the Court's Order of January 26, 200.  (Doc. 113 at 6 n.7).

D. Agere's Counterclaims

In response to the VTO Plaintiffs' claims, Agere filed counterclaims for, *inter alia*, breach of contract and unjust enrichment.[5] (Doc. 61). Agere alleged that: (1) the VTO Plaintiffs accepted the VTO by signing a waiver of benefits under the MOA and the EFCP; (2) in reliance on that acceptance, Agere paid the VTO Plaintiffs the amounts promised in the VTO; (3) but for their waiver of benefits under the MOA and the EFCP, the VTO Plaintiffs would not have been entitled to such payments; and (4) the VTO Plaintiffs subsequently filed suit asserting an entitlement to benefits under the MOA and the EFCP. (Doc. 61 at 18-20). In essence, Agere asserted that the VTO is a contract, the intent of which was that, in exchange for receiving the VTO benefit payments, the VTO Plaintiffs released any claim to benefits under the MOA and the EFCP, and thereby agreed "not [to] file an action in court seeking to obtain any of those benefits." (*Id*. at 22). Agere further asserted that by filing suit seeking benefits under the MOA and the EFCP, the VTO Plaintiffs breached that contract, and that forced Agere to incur expenses, including attorney's fees, in defending that suit. (*Id*. at 22, 21).

E. Summary Judgment on VTO Plaintiffs' Claims

The Court granted summary judgment for Defendants on the VTO Plaintiffs' claims in an Order dated January 26, 2005, wherein the Court found that the VTO "is a valid contract . . . and in exchange for the consideration paid to the Plaintiffs, the Plaintiffs released any benefits they might

---

[5] Agere also filed a counterclaim for fraudulent inducement, which claim was subsequently dismissed upon a stipulation by the parties. (Doc. 196).

otherwise be entitled to under the MOA or the EFCP." (Doc. 113 at 11).[6]  The Court further determined that the "language of the VTO clearly indicates, on its face, that by signing the form, the employee acknowledges that the provisions of the EFCP and MOA will not apply, thus indicating a release of those benefits." (*Id*.).  Finally, the Court noted that "[i]n essence, Plaintiffs adopt[ed] a 'heads I win, tails you lose' approach, by keeping the benefits of one contract, even though they allege it to be fraudulent, and yet suing to obtain other contractual benefits, the surrender of which constituted the consideration for the VTO." (*Id*. at 19 n.22).

F. Arguments

The VTO Plaintiffs now argue that Agere's counterclaims represent an attempt to seek attorney's fees incurred in defending the VTO Plaintiffs' claims, and that: (1) Agere is not entitled to attorney's fees for bringing these claims because no contract (particularly the VTO) or statute provides for such an award; (2) the VTO Plaintiffs did not breach a contract provision because the VTO does not contain a promise by the VTO Plaintiffs that they would refrain from filing a suit seeking benefits under the MOA and/or the EFCP; (3) the VTO Plaintiffs have not been unjustly enriched because Agere received the benefit of its bargain, in that the only basis for such a claim is the inequity of the VTO Plaintiffs retaining the VTO benefits while pursuing a claim for benefits under the MOA and/or EFCP, and that basis no longer exists as a result of the Court's grant of summary judgment in favor of Agere on the VTO Plaintiffs' claims; and (4) damages are not recoverable in an equitable claim.

---

[6] *See also* Doc. 113 at 10 ("[O]nce Plaintiffs accepted the VTO, and in consideration of that acceptance, the Defendants made payments to Plaintiffs of the amounts to which each Plaintiff was entitled pursuant to a chart contained in the VTO. Doc. 82 at ¶ 27.  In consideration for receiving these VTO payments, Plaintiffs agreed to release any claim to benefits under the MOA and the EFCP.").

-5-

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgement points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[7]

---

[7] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

### III.     Legal Analysis

A. Breach

The VTO Plaintiffs argue that they did not breach the VTO by filing suit against Agere for benefits under the MOA and/or the EFCP because the VTO does not contain an express promise by the VTO Plaintiffs that they would not sue Agere for those benefits. The VTO Plaintiffs further argue that the language of the VTO is unambiguous, and that the absence of such a provision indicates an intent to exclude it.

The VTO Plaintiffs' argument simply cannot be supported. Indeed, as Agere points out, "[e]very contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken." *First Nationwide Bank v. Fla. Software Servs., Inc.*, 770 F. Supp. 1537, 1542 (M.D. Fla. 1991); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999). "Thus, a contract may have legal effect beyond its actual words, resultant upon its wording and purpose and may embody obligations which legally are to be implied from its words and the relationship of the parties." *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1340 (S.D. Fla. 1998); *see also Heredia v. Safeway Trails, Inc.*, 369 So. 2d 418, 420 (Fla. 3rd DCA

1979).[8] The VTO Plaintiffs' argument essentially means that parties to a contract are free to do anything not expressly forbidden by the contract and, further, that even if they adopt and/or act on a position clearly inconsistent with the terms of the contract, they cannot be in breach thereof. Such a conclusion is inconsistent with the covenant of good faith and fair dealing.

The VTO Plaintiffs do not dispute that in exchange for consideration in the form of benefits paid, they signed the VTO, in which they agreed that the terms of the MOA and EFCP did not apply to them. They also do not dispute that after signing the VTO and accepting their payment, they then turned around and filed suit against Agere, asserting that the terms of the MOA and EFCP did apply to them and that they were entitled to additional benefits thereunder. Regardless of whether one construes the VTO (as the Court previously did) as a release, or simply as an agreement to certain terms, the fact remains that by their actions, the VTO Plaintiffs clearly adopted contradictory positions. The position the VTO Plaintiffs would have the Court adopt would require the Court to construe the VTO in a way that would result in a profound inequity to Agere, and this the Court cannot do. *See Maccaferri Gabions, Inc. v. Dynateria, Inc.*, 91 F.3d 1431, 1443 (11th Cir. 1996) ("Under Florida law, as generally, a contract clause should not be

---

[8] One of the implied terms is the implied covenant of good faith. *First Nationwide*, 770 F. Supp. at 1542. "This implied covenant arises because a contract is an agreement whereby each party promises to perform their part of the bargain in good faith, and expects the other party to do the same. Thus, the implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations." *Cox*, 732 So. 2d at 1097 (internal citation and quotation omitted). "The covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract. This rule was developed in the contract arena and is aimed at protecting the reasonable or justifiable expectations of the contracting parties in light of their express agreement." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (internal citations omitted). It cannot reasonably be argued that Agere lacked a reasonable expectation in offering the VTO that employees who agreed to it would not subsequently assert their rights under the MOA and/or the EFCP.

interpreted in such a way as to destroy mutuality of obligation and, thereby, invalidate the contract."); *James v. Gulf Life Ins. Co.*, 66 So. 2d 62, 63-4 (Fla. 1953) ("The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other.") (internal citations and quotations omitted).  Thus, the VTO Plaintiffs' Motion for summary judgment as to liability for breach of contract is denied.

    B. Damages

The VTO Plaintiffs correctly point out that the traditional "American rule" for attorney's fees is that such fees are not normally recoverable by the prevailing party in litigation in the absence of statutory authority.  *U.S. v. Pepper's Steel & Alloys, Inc.*, 289 F.3d 741, 742 (11th Cir. 2002) (applying Florida law); *Dade County v. Peña*, 664 So. 2d 959, 960 (Fla. 1995).  However, in this case, Agere does not assert an entitlement to fees as a result of prevailing on the VTO Plaintiffs' claims for benefits.  Instead, Agere's counterclaim seeks attorney's fees as a consequence of the VTO Plaintiffs' breach of the VTO contract.  Several courts have stated that such a claim is appropriate where, as Agere asserts here, the suit complained of was filed in breach of a covenant not to sue.  *See Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union No. 377*, 700 F.2d 1067, 1072 (6th Cir. 1983) (defendant who filed counterclaim seeking attorney's fees as measure of damages incurred in defending lawsuit instituted purportedly in violation of covenant not to sue was not precluded by American rule from seeking such a measure of damages); *Paper, Allied, Chemical & Energy Workers Int'l Union, Local 5-508, AFL-CIO v. Slurry Explosive Corp.*, 107 F. Supp. 2d 1311,

1331 (D. Kans. 2000) (defendant could pursue counterclaim seeking attorney's fees incurred in conjunction with claim filed in breach of agreement which defendant asserted that it entered specifically to avoid cost of litigation); *see also Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897, 901-902 (D.N.J. 1991) (where defendant asserted counterclaim that plaintiff instituted lawsuit in bad faith and, in doing so, breached implied covenant of good faith and fair dealing, attorney's fees were proper measure of damages; "[i]f the covenant breached is a promise not to file suit in bad faith, then the logical measure of damages is the direct consequence of breach of that right: the costs of defending the wrongful suit.").[9] Thus, the VTO Plaintiffs' Motion will be denied as to the measure of damages Agere seeks in its breach of contract claim.

  C. Unjust Enrichment

Agere asserted this claim on the ground that the VTO Plaintiffs "accepted and retained the benefits provided by Agere under the [VTO] under such circumstances that it would be inequitable for the [VTO Plaintiffs] to retain those benefits while at the same time pursuing a cause of action against Agere and/or Lucent for benefits under the MOA and/or EFCP."  (Doc. 61 at 24). However, based on this Court's previous Order which concluded that the VTO Plaintiffs "released any benefits they might otherwise be entitled to under the MOA or the EFCP[,]" (Doc. 113 at 11), Agere's claim for unjust enrichment is therefore moot.

---

   [9] However, *see Artvale, Inc. v. Bugby Fabrics Corp.*, 232 F. Supp. 814, 825-26 (S.D.N.Y. 1964) (counterclaim asserting action for breach of contract and seeking expenses of litigation caused by breach of contract not to sue could not properly seek such expenses as damages, as there was no contractual or statutory authority for such an award, and because the "time, money and expense of suing or being sued are viewed simply as the consequences of every suit") (internal citation and quotation omitted).

**IV.     Conclusion**

For the reasons stated herein, the VTO Plaintiffs' Motion for Summary Judgment (Doc. 197) is DENIED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 5, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party